Receipt number AUSFCC-8533652

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

_____

TERRY W. KWONG,

Plaintiff

v.

THE UNITED STATES,

Defendant

23-267 T

_____

## COMPLAINT

Plaintiff, Terry W. Kwong, by and through his counsel, Anthony Diosdi, files this action against the defendant, the United States of America. In support thereof, plaintiff alleges the following:

### NATURE OF THE ACTION

1. This is an action arising under the internal revenue laws of the United States for recovery of delinquency penalties paid by Plaintiff for the 2007, 2010, 2011, 2015 and 2016 tax years.

## JURISDICTION AND VENUE

2. This court has jurisdiction and venue is proper pursuant to Title 28, United States Code (U.S.C.), § 1491(a)(1).

## PARTIES

3. Plaintiff Terry W. Kwong, social security number xxx-xx-3093 is a United States citizen.

4. Plaintiffs' current mailing address is 3288 Pierce Street, Suite M-126, Richmond, CA 94804.

5. The defendant is the United States of America.

## AUTHORITY FOR REFUND

6. The Internal Revenue Service ("IRS") is authorized by Section 6402 of the Internal Revenue Code ("IRC") to refund an overpayment of federal taxes to the person who made the overpayment. Section 7422 of the IRC mandates that no suit for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected shall be maintained in any court until a claim for refund has been filed. Revenue Code § 6511 provides that a claim for refund is timely filed if it is filed within three years of the date of the filing of the tax return or within two years of the date of payment of tax. Pursuant to IRC § 6532(a), no suit for refund for the recovery of any internal revenue tax, penalty, or other sum shall begin before the expiration of six months

of the date of the filing of the administrative claim for refund, unless the claim is disallowed by the IRS prior to the six month period.

7. **Tax Year 2007 Refund Claim:** According to the IRS transcript dated November 5, 2020, plaintiff fully satisfied income taxes, penalties, and interest for the 2007 tax year. A true and correct copy of the transcript issued by the IRS is hereto attached **Exhibit A.**

8. On or about March 20, 2020, plaintiff filed Form 843 'Claim for Refund and Request for Abatement' for tax year 2007 ('2007 Claim for Refund') with the IRS.

9. Plaintiff's 2007 Claim for Refund provided the defendant with adequate notice that plaintiff sought a refund of $84,000 for IRC 6651 and IRC 6654 delinquency penalties assessed and collected by defendant for the 2007 tax year.

10. On October 13, 2020, defendant responded to plaintiff's 2007 Claim for Refund by way of LTR 853C, rejecting plaintiff's request for abatement of delinquency penalties assessed against plaintiff for tax year 2007.

11. **Tax Year 2010 Refund Claim:** According to the IRS transcript dated November 5, 2020, plaintiff fully satisfied income taxes, penalties, and interest for the 2010 tax year. A true and correct copy of the transcript issued by the IRS is hereto attached **Exhibit B.**

12. On or about March 20, 2020, plaintiff filed Form 843 'Claim for Refund and Request for Abatement' for tax year 2010 ('2010 Claim for Refund') with the IRS.

13. Plaintiff's 2010 Claim for Refund provided the defendant with adequate notice that plaintiff sought a refund of $35,033 for IRC 6651 and IRC 6654 delinquency penalties assessed and collected by defendant for the 2010 tax year.

14. On October 9, 2020, defendant responded to plaintiff's 2010 Claim for Refund by way of LTR 853C, rejecting plaintiff's request for abatement of delinquency penalties assessed and collected for tax year 2010.

15. **Tax Year 2011 Refund Claim**: According to the IRS transcript dated November 5, 2020, plaintiff fully satisfied income taxes, penalties, and interest for the 2011 tax year. A true and correct copy of the transcript issued by the IRS is hereto attached **Exhibit C.**

16. On or about March 20, 2020, plaintiff filed Form 843 'Claim for Refund and Request for Abatement' for tax year 2011 ('2011 Claim for Refund') with the IRS.

17. Plaintiff's 2011 Claim for Refund provided the defendant with adequate notice that plaintiff sought a refund of $72,867 for IRC 6651 and IRC 6654 delinquency penalties

18. On September 23, 2020, defendant responded to plaintiff's 2010 Claim for Refund by way of LTR 853C, rejecting plaintiff's request for abatement of delinquency penalties assessed and collected for tax year 2011.

19. **Tax Year 2015 Refund Claim**: According to the IRS transcript dated November 5, 2020, plaintiff fully satisfied income taxes, penalties, and interest for the 2015 tax year. A true and correct copy of the transcript issued by the IRS is hereto attached **Exhibit D.**

20. On or about March 20, 2020, plaintiff filed Form 843 'Claim for Refund and Request for Abatement' for tax year 2015 ('2015 Claim for Refund') with the IRS.

21. Plaintiff's 2015 Claim for Refund provided the defendant with adequate notice that plaintiff sought a refund of $10,727 for IRC 6651 and IRC 6654 delinquency penalties

22. More than six months have elapsed since the date of the filing of the administrative claims for refund for the 2015 tax year.

23. **Tax Year 2016 Refund Claim**: According to the IRS transcript dated November 5, 2020, plaintiff fully satisfied income taxes, penalties, and interest for the 2016 tax year. A true and correct copy of the transcript issued by the IRS is hereto attached **Exhibit E.**

24. On or about March 20, 2020, plaintiff filed Form 843 'Claim for Refund and Request for Abatement' for tax year 2016 ('2016 Claim for Refund') with the IRS.

25. Plaintiff's 2016 Claim for Refund provided the defendant with adequate notice that plaintiff sought a refund of $318,519 for IRC 6651 and IRC 6654 delinquency penalties.

26. More than six months have lapsed since the date of the filing of the Form 843 Claim for Refund for the 2016 tax year.

## PRELIMINARY BACKGROUND

27. Plaintiff is an individual who filed tax returns for the tax years at issue.

28. Plaintiff has no experience or training in tax or accounting.

29. Plaintiff timely filed his 2005 federal income tax return which reflected a federal tax liability of approximately $27,000.

30. During the 2005 tax year, plaintiff was a shareholder in Pacific Infinity Corporation (hereinafter "PIC"), a California subchapter S corporation. The plaintiff owned 40 percent of PIC shares.

31. On September 25, 2005, the shareholders of PIC entered into an agreement on behalf of the corporation to retire the entity's existing mortgage debt.

32. Sometime after the 2005 calendar year, the plaintiff was advised by attorney Mattaniah Eytan that he could claim a loss of $2,315,017 on 2005 individual income tax returns.

The plaintiff was also advised that any unused portion of this loss could be carried forward to future tax years.

33. Sandy Maggid, a Certified Public Accountant ("CPA") prepared an amended 2005 tax return reporting allocating a $2,315,017 from PIC to the plaintiff's 2005 individual income tax returns.

34. The plaintiff was advised by both Sandy Maggid, a CPA and Mattaniah Eytan, a licensed attorney, that he could carry forward any of the $2,315,017 losses forward to future years.

35. As a result of the professional advice received by the plaintiff, he did not timely satisfy his 2007, 2010, and 2011 tax liabilities. The plaintiff also did not timely file his 2010 and 2011 federal income tax returns.

36. In 2012, the IRS claimed that the plaintiff did not properly increase his basis in the PIC stock under IRC Section 1366 and the IRS reduced the loss associated with the PIC corporation from $2,315,017 to $1,001,970.

37. The IRS's adjustment resulted in the entire loss being used in the 2005 and 2006 tax years.

38. As a result of this adjustment, the plaintiff was assessed failure to timely file tax returns, failure to timely pay taxes penalties, and failure to timely make estate tax penalties (hereinafter "delinquency penalties") against the plaintiff for the 2007, 2010, and 2011 tax years.

39. The plaintiff provided attorney Mattaniah Eytan and Archie Sam, CPA with all necessary information to determine the correct PIC loss. Determining the basis under Section 1366 of one's corporate stock involves substantive matters and issues beyond the knowledge of

a lay taxpayer. Without a doubt, the plaintiff acted reasonably in choosing to rely on the advice of two licensed professionals in determining his PIC loss. the incorrect information received by the plaintiff resulted in the IRS assessing delinquency penalties against in 2007, 2010, and 2011.

40. For the 2015 tax year, plaintiff retained the services of Archie Sam, CPA. The plaintiff timely filed his 2015 tax year and made a payment of $221,549 to satisfy his entire tax liability for that year.

41. Without notifying the plaintiff, on or about April 15, 2017, the IRS transferred the entire $221,549 payment to another tax year and assessed significant delinquency penalties against the plaintiff for the 2015 tax year.

42. Although the IRS transferred the entire $221,549 tax payment designated to the 2015 tax year, the IRS never properly informed the plaintiff which year the $221,549 was transferred.

43. As with the 2015 tax year, the plaintiff retained Archie Sam, CPA to prepare his 2016 tax return. The 2016 individual federal income tax return was timely filed and the plaintiff timely made a payment of $318,519 to satisfy his 2016 tax liability.

44. Without notifying the plaintiff, the IRS transferred the entire $318,519 payment to another tax year and assessed significant delinquency penalties against the plaintiff for the 2016 tax year.

45. The plaintiff has a right to know where his payments are applied and if the IRS applies payments to tax years in which the statute of limitations has expired at the time the

      payments were applied, the plaintiff demands a refund of the payments that were misapplied.

46. Not only did the IRS misapply tax payments for the 2015 and 2016 tax years, the IRS erroneously assessed delinquency penalties against the plaintiff for these years. The IRS should not assess delinquency penalties against a taxpayer that timely satisfies his tax liability.

47. As soon as the plaintiff discovered he had obligations with the IRS for the 2007, 2010, 2011, 2015, and 2016 tax years, the plaintiff made arrangements to resolve these tax obligations. The plaintiff also voluntarily met with the IRS Revenue Officer assigned to this matter and arranged to satisfy his 2007, 2010, 2011, 2015, and 2016 tax liabilities in full.

## **2007 CLAIM FOR REFUND**

48. Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

49. Plaintiff filed his 2007 tax return with an outstanding tax liability of $263,199.

50. Plaintiff was advised by Sandy Maggid CPA and Mattaniah Eytan that a loss from PIC from the 2005 tax year could be used to offset the tax liability reflected on the 2007 tax return.

51. As a result of an IRS adjustment to the 2005 PIC loss, the plaintiff could not offset the tax liability related to the plaintiff's 2007 income tax return.

52. Believing that a loss was available from the 2005 tax year to offset his 2007 tax liability, the plaintiff did not timely satisfy his 2007 tax liability. As a result, the IRS assessed delinquency penalties against the plaintiff for the 2007 tax year.

53. The Internal Revenue Code provides that delinquency penalties shall not apply if the taxpayer acted with reasonable cause and in good faith. A taxpayer may establish a defense to the assessment of delinquency penalties by proving reasonable reliance in good faith on the advice of a competent, independent expert or tax professional. *See United States v. Boyle*, 469 U.S. 241, 250 (1985). The United States Supreme Court has adopted a test as to what constitutes reasonable reliance on a tax advisor: 1) the taxpayer is unfamiliar with tax law; 2) the taxpayer makes full disclosure of all relevant facts to the tax advisor; and 3) the taxpayer exercised ordinary business care and prudence in selecting the tax advisor or tax professional.

54. The United States Supreme Court has recognized the enormous complexities of the Internal Revenue Code, and noted that taxpayers have no other viable alternatives than to rely upon professional advice. Such reliance is not only reasonable, but is in fact, simply necessary for many unsophisticated taxpayers. In this case, the plaintiff was led to believe that he had net operating loss carryforwards to offset his 2007 tax liability from PIC from 2005 by a CPA and a licensed attorney. Consequently, the plaintiff did not timely satisfy his 2007 tax liability.

55. The taxation of carryforward losses and determining one's basis in corporate stock under IRC Section 1366 involves substantive matters and issues that are beyond the knowledge of a lay taxpayer. The plaintiff acted reasonably in choosing to rely on the advice of a

CPA and a licensed attorney. At least one circuit court has held that when a taxpayer "selects a competent tax expert, supplies him with all necessary information," the taxpayer has done all that ordinary business care and prudence can reasonably demand. *See Haywood Lumber & Mining Co. v. Commissioner*, 178 F.2d 769 (2d Cir. 1950).

56. The plaintiff acted reasonably and in good faith in not timely satisfying his 2007 tax liability. Since the plaintiff acted ordinarily and reasonably in determining his 2007 tax liability, the plaintiff is entitled to a refund of all the delinquency penalties assessed against him for the 2007 tax year.

57. In the alternative, the plaintiff is not liable for delinquency penalties in 2007 which resulted in a mistake of law. At least one federal court has held that a taxpayer is not liable for underpayment penalties which resulted from a mistake of law. *See Freeland v. Commissioner*, T.C. Memo 1986-10. In the present case, the plaintiff was mistaken regarding the need to pay his 2007 tax liability based on the advice of a CPA and a licensed attorney.

58. Since the plaintiff acted ordinarily and reasonably in determining his 2007 tax liability, the plaintiff seeks a refund of $84,000 for the 2007 tax year.

## **2010 CLAIM FOR REFUND**

59. Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

60. The plaintiff filed his 2010 tax return on March 19, 2012. The tax return reflected a tax liability of $155,270.

61. As with the 2007 tax year, the plaintiff believed that he could utilize the PIC carryforward loss from 2005 tax year to offset his 2010 tax liability. Since the plaintiff did not believe that he had owed income taxes for the 2010 tax year, the plaintiff did not believe he had an obligation to file his 2010 tax return.

62. The plaintiff was mistaken regarding the need to file a 2010 tax return and timely pay taxes for the 2010 tax year based on the advice of a CPA and licensed attorney.

63. The plaintiff did everything the law required of him to determine his 2010 tax liability and compliance requirements. However, as a result of a mistake of fact and law, the plaintiff failed to timely satisfy his 2010 federal income tax and file his 2010 federal income tax returns.

64. Since the plaintiff acted ordinarily and reasonably in determining his 2010 tax liability, the plaintiff seeks a refund of $35,033 for the 2010 tax year.

## 2011 CLAIM FOR REFUND

65. Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

66. The plaintiff filed his 2011 tax return on November 19, 2012. The tax return reflected a tax liability of $267,995.

67. As with the 2007 tax year, the plaintiff believed that he could utilize the PIC carryforward loss from 2005 tax year to offset his 2011 tax liability. Since the plaintiff did not believe that he had owed income taxes for the 2011 tax year, the plaintiff did not believe he had an obligation to file his 2011 tax return.

68. The plaintiff was mistaken regarding the need to file a 2011 tax return and timely pay taxes for the 2011 tax year based on the advice of a CPA and licensed attorney.

69. The plaintiff did everything the law required of him to determine his 2011 tax liability and compliance requirements. However, as a result of a mistake of fact and law, the plaintiff failed to timely satisfy his 2011 federal income tax and file his 2011 federal income tax returns.

70. Since the plaintiff acted ordinarily and reasonably in determining his 2011 tax liability, the plaintiff seeks a refund of $72,867 for the 2011 tax year.

## 2015 CLAIM FOR REFUND

71. Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

72. Plaintiff timely filed his 2015 income tax return and made a payment of $267,271 with his tax return.

73. The IRS reallocated the payment that the plaintiff made with his 2015 tax return to another tax year and assessed delinquency penalties against the plaintiff. Even though the

IRS reallocated the plaintiff's 2015 tax payment in 2016, it was not until the 2019 calendar year until the IRS notified the plaintiff of the reallocation.

74. The plaintiff retained Archie Sam, CPA to prepare his 2015 individual income tax return.

75. Given the fact that the plaintiff reasonably relied on a CPA to determine his correct tax liabilities for the 2015 tax year, the plaintiff acted reasonably and in good faith.

76. Had the CPA warned the plaintiff of the consequences of the reallocation of the 2015 tax payments to another year, the plaintiff would not have had an outstanding 2015 tax liability and would not have been assessed delinquency penalties for the 2015 tax year.

77. The plaintiff did everything right for the 2015 tax year.

78. The plaintiff retained the services of a CPA and provided the CPA with all of his records.

79. The plaintiff timely filed his tax return and paid all required taxes.

80. Unknown to the plaintiff, the IRS transferred his 2015 tax payments to another tax year.

81. This resulted in an unexpected tax assessment and delinquency penalty. However, as a result of a mistake by the plaintiff's CPA, the plaintiff was assessed a delinquency penalty for the 2015 tax year.

82. The plaintiff also seeks a refund of $10,727 in delinquency penalties erroneously assessed against him for the 2015 tax year.

## 2016 CLAIM FOR REFUND

83. Plaintiffs reallege and incorporate the allegations set forth above as if fully set forth herein.

84. Plaintiff timely filed his 2016 income tax return and made a payment with his tax return.

85. The IRS reallocated the payment that the plaintiff made with his 2016 tax return to another tax year and assessed delinquency penalties against the plaintiff. Even though the IRS reallocated the plaintiff's 2016 tax payment to another tax year, it was not until the 2019 calendar year until the IRS notified the plaintiff of the reallocation.

86. The plaintiff retained Archie Sam, CPA to prepare his 2016 individual income tax return.

87. Given the fact that the plaintiff reasonably relied on a CPA to determine his correct tax liabilities for the 2016 tax year, the plaintiff acted reasonably and in good faith.

88. Had the CPA warned the plaintiff of the consequences of the reallocation of the 2016 tax payments to another year, the plaintiff would not have had an outstanding 2016 tax liability and would not have been assessed delinquency penalties for the 2016 tax year.

89. The plaintiff did everything right for the 2016 tax year.

90. The plaintiff retained the services of a CPA and provided the CPA with all of his records.

91. The plaintiff timely filed his tax return and paid all required taxes.

92. Unknown to the plaintiff, the IRS transferred his 2016 tax payments to another tax year.

93. This resulted in an unexpected tax assessment and delinquency penalty. However, as a result of a mistake by the plaintiff's CPA, the plaintiff was assessed a delinquency penalty for the 2016 tax year.

94. The plaintiff also seeks a refund of $318,519 in delinquency penalties erroneously assessed against him for the 2016 tax year.

**WHEREFORE**, Plaintiff prays for the following relief:

A. For refund of delinquency penalties overpaid by plaintiffs for the 2007 tax year in the amount of $84,000;

B. For refund of interest on delinquency penalties assessed against and paid by plaintiff for the 2007 tax year;

C. For refund of the delinquency penalties overpaid by the plaintiffs for the 2010 tax year in the amount of $35,033;

D. For refund of interest on delinquency penalties paid by plaintiff for the 2010 tax year;

E. For refund of the delinquency penalties overpaid by the plaintiffs for the 2011 tax year in the amount of $72,867;

F. For refund of interest on delinquency penalties paid by plaintiff for the 2011 tax year;

G. For refund of the delinquency penalties overpaid by the plaintiffs for the 2015 tax year in the amount of $10,727;

H. For refund of interest on delinquency penalties paid by plaintiff for the 2015 tax year;

I. For refund of the delinquency penalties overpaid by the plaintiff for the 2016 tax year in the amount of $318,519;

J. For refund of interest on delinquency penalties paid by plaintiff for the 2016 tax year;

K. An award of attorney fees, costs, and other expenses incurred by the plaintiffs to the extent allowed by law;

L. For further and other relief the Court may deem just and proper.

Respectfully Submitted,

/s/ Anthony V. Diosdi

Dated: February 23, 2023

_____
Anthony V. Diosdi
Diosdi Ching & Liu, LLP
505 Montgomery St. 11th Floor
San Francisco, CA 94111
Telephone: 415-318-3990
Fax: 415-335-7922
E-mail: adiosdi@sftaxcounsel.com

Attorney for Plaintiff