IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 23-267 T
(Judge Molly R. Silfen)

TERRY W. KWONG

                    Plaintiffs,

v.

THE UNITED STATES,
                    Defendant.

**PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

I. Factual Background……………...……………………………………………..…………..1

II. Standard For Decision on a Motion for Summary Judgment……………….………….2

III. This Court Has Jurisdiction to Hear the 2007 through 2011 Tax Years……...……….3

IV. Disaster Relief Under Section 7508A ………………………………………………...…6

V. The IRS Did Not Properly Apply Payments From the 2016 Tax Year to the 2007 Tax Year……………………………………………………………………………………….10

VI. Conclusion……………………………………………………………..…………..12

## TABLE OF AUTHORITIES

**Cases**

*Abdo v. Commissioner*, 162 T.C. No. 7 (Apr. 2, 2024)..................................................7-9

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)................................................2-3

*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)........................................................3

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)........7-8

*Henderson ex rel Henderson v. Shineseki*, 562 U.S. 428 (2011)....................................5

*Loper Bright Enterprise v. Raimondo*, 603 U.S. 369 (2024)..........................................8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp*, 475 U.S. 574, 587 (1987)...............3

*Moden v. United States*, 404 F.3d 1335, 1342 (Fed. Cir. 2005)..................................2-3

*Novartis Corp. v. Ben Venue Labs*, 271 F.3d 1043, 1046 (Fed. Cir. 2001)...................3

*Riley & Ephriam Constr. Co. v. United States*, 408 F.3d 1368, 1371 (Fed. Cir. 2005)................3

*United States v. Boyle*, 269 U.S. 241, 246 (1985)..........................................................10

*United States v. Kwai Fun Wong*, 575 U.S. 402, 135 S.Ct. 1625, 1631 (2015)..........................4-5

*Volpicelli v. United States*, 777 F.3d 1042 (9th Cir. 2015).........................................................4-5

**Statutes**

26 U.S.C. Section 6532(a)...............................................................................................2-6, 9-10

26 U.S.C. Section 6532(a)(1).....................................................................................................3

26 U.S.C. Section 6532(c).......................................................................................................4-5

26 U.S.C. Section 7508A .........................................................................................................6-9

26 U.S.C. Section 7508A(a)........................................................................................................7

26 U.S.C. Section 7508A(d).....................................................................................................7-9

26 U.S.C. Section 7508A(d)(2)(A)..............................................................................................9

26 U.S.C. Section 7508A(d)(3)...................................................................................................9

28 U.S.C. Section 1346(a)(1)......................................................................................................5

**Other Authorities**

FEMA Declaration 3428 (March 13, 2020)................................................................................7

Letter to Federal Agencies on an Emergency Determination for the Coronavirus Disease 2019 (COVID-19) Pandemic Under the Robert T. Strafford Disaster Relief and Emergency Assistance Act, 20-20 Daily Comp. Pres. Doc. 159 (Mar. 13, 2020)..........................................6

Presidential Proclamation 9994 (March 13, 2020)..................................................................1, 6

Fed. Cl. R. "RCFC" 56(c).........................................................................................................2

Section 10.34(a)(1) of Circular 230..........................................................................................10

Section 10.34(a)(2) of Circular 230..........................................................................................11

**Regulations**

Treas. Reg. Section 301.7508A-1(g)(1) and (2)........................................................................8

Treas. Reg. Section 301.7701-15(a)(2).....................................................................................11

## APPENDIX

| Page(s) | Document Description |
| --- | --- |
| 1-53 | Deposition Transcript of Terry Kwong, taken February 14, 2025. |

## I. Factual Background

The Plaintiff is a California resident. *See* Kwong Dep. 37:10-11. The Plaintiff is an individual with no training or experience in tax or accounting. *See* Kwong Dep. 17:23-24. During the 2005 tax year, Plaintiff was a shareholder in Pacific Infinity Corporation (hereinafter "PIC"), a California subchapter S corporation. *See* Kwong Dep. 8:6–7, 15–20. In 2005, the shareholders of PIC entered into an agreement on behalf of the corporation to retire the entity's existing mortgage debt. *See* Kwong Dep. at 13:20-22. The Plaintiff was advised that he could claim a loss of $2,315,017 on his 2005 tax return and carry this loss forward to future years. *See* Kwong Dep. at 18:14-16. Sandy Magid, a Certified Public Accountant prepared the Plaintiff's 2005 claiming the $2,315,017 loss. *See* Kwong Dep. 18:20-22. As a result of the professional advice that the Plaintiff received from Mattaniah Eytan and Sandy Magid, the Plaintiff did not believe that he owed tax liabilities for the 2007, 2010, and 2011 tax years. *See* Kwong Dep. at 18:14-16; 19:2-4. Since the Plaintiff did not believe that he owed income taxes for the 2007, 2008, and 2010 tax years, the Plaintiff did not timely pay income taxes for these years. *Id.*

In 2012, the Internal Revenue Service ("IRS") reduced the Plaintiff's 2005 carryforward loss from $2,315,017 to $1,001,970. *See* MSJ p. 6. As a result of this adjustment, the Plaintiff was assessed significant delinquency penalties for the 2007, 2010, and 2011 tax years. *See* Answer at ¶38. On March 13, 2020, President Donald Trump declared a nationwide emergency as a result of the COVID-19 global pandemic and also approved major disaster declarations for each 50 states under the Strafford Act. *See* Presidential Proclamation 9994 (March 13, 2020). On April 7, 2020, the Plaintiff filed administrative refund claims with the IRS. *See* Answer at ¶¶ 8, 12, 16, 20, 24. On September 23, 2020, October 9, 2020, and October 13, 2020, the IRS rejected Plaintiff's 2011, 2010, and 2007 claim for refunds respectively. *See* Answer at ¶¶ 10, 14, 18. For the next two years, the United States suffered through numerous lockdowns. On February 23, 2023, the Plaintiff

1

filed suit in this Court demanding a refund of the delinquency penalties that the IRS assessed against him for the 2007, 2010, and 2011 tax years . *See* ECF No. 1. Plaintiff's complaint put the Defendant on notice that claims for refund for the 2007, 2010, and 2011 were filed beyond Section 6532(a)'s two-year statute of limitations. *See* Answer at ¶¶ 10, 14, 18. After the Plaintiff filed this lawsuit, the Defendant requested and were granted a series of extensions to file their answer that delayed the litigation approximately 5 months. *See* ECF Nos. 6-7, 10-11, 14-15. Despite the fact that the Plaintiff put the Defendant on notice of the Section 6532(a) statute of limitations issue, the Defendant answered the Plaintiff's complaint and did not file a partial Motion to Dismiss.

## II. Standard For Decision on a Motion for Summary Judgment

On a motion for summary judgment, if there is no genuine issue as to any material fact, the moving party is entitled to judgment as a matter of law. *See Moden v. United States*, 404 F.3d 1335, 1342 (Fed. Cir. 2005) ("Summary judgment is only appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."); *see also* RCFC 56(c). Only genuine disputes as to material facts that might affect the outcome of the suit will preclude entry of summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) ("As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. . . . That is, while the materiality determination rests on the substantive law, it is the substantive law's identification of which the facts are critical and which facts are irrelevant that governs."). The existence of "some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Id.* Therefore, to avoid summary judgment, the nonmoving party must put forth evidence sufficient for a reasonable fact-finder to return a verdict for that party. *Id.* at 248-50.

2

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (holding the moving party must meet its burden "by 'showing' - that is, pointing out to the [trial court] - that there is an absence of evidence to support the nonmoving party's case"); *see also Riley & Ephriam Constr. Co. v. United States*, 408 F.3d 1368, 1371 (Fed. Cir. 2005) ("The moving party bears the burden of demonstrating the absence of a genuine issue of material fact, however, the burden shifts to the nonmoving party to show the existence of a genuine issue for trial. *See Novartis Corp. v. Ben Venue Labs*, 271 F.3d 1043, 1046 (Fed. Cir. 2001) (explaining that, once the movant has demonstrated the absence of a genuine issue of fact, "the burden shifts to the nonmovant to designate specific facts showing that there is a genuine issue of material fact, "the burden shifts to the nonmovant to designate specific facts showing that there is a genuine issue for trial"). A trial court is required to resolve all doubt over factual issues in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*, 475 U.S. 574, 587 (1987). All reasonable inferences and presumptions must be resolved in favor of the nonmoving party. *See Anderson*, 477 U.S. at 255; *see also Moden*, 404 F.3d at 1342 ("[A]ll justifiable inferences [are drawn] in favor of the party opposing summary judgment.").

### III. This Court Has Jurisdiction to Hear the 2007 through 2011 Tax Years

The Defendant claims that Plaintiff's claims for refund for the 2007, 2010, and 2011 tax years are jurisdictionally barred under Section 6532(a)(1)'s two-year statute of limitations for filing refund suits. Section 6532(a) provides as follows:

> a) Suites by taxpayers for refunds. -
> (1) General rule.- No suit or proceeding under Section 7422(a) for the recovery of any internal revenue tax, penalty, or other sum, shall be begun before the expiration of 6 months from the date of filing the claim required under such section unless the Secretary renders a decision thereon within that time, nor after the expiration of

3

> 2 years from the date of mailing be certified mail or registered mail by the Secretary to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates.
> (2) Extension of time.- The 2-year period prescribed in paragraph (1) shall be extended for such period as may be agreed upon in writing between the taxpayer and the Secretary.
> (3) Waiver of notice of disallowance.-If any person files a written waiver of the requirement that he be mailed a notice of disallowance, the 2-year prescribed in paragraph (1) shall begin on the date such waiver is filed.
> (4) Reconsideration after mailing of notice.- Any consideration, reconsideration, or action by the Secretary with respect to such claim following the mailing of a notice by certified mail or registered mail of disallowance shall not operate to extend the period within which suit may be begun.

If a provision setting forth a statute of limitations is jurisdictional, a litigant's failure to comply with the bar deprives a court of all authority to hear a case. *United States v. Kwai Fun Wong*, 575 U.S. 402, 135 S.Ct. 1625, 1631 (2015). In such a case, a court must enforce the limitations even if the other party has waived any timeliness objection and must do so even if equitable considerations would support extending the prescribed time period. *Id.* Because the consequences are so drastic, the United States must clear a high bar to establish that a statute of limitations is jurisdictional. *Id.* at 1632. "[A]bsent such a clear statement, . . . courts should treat the restriction as nonjurisdictional." *Id.* "Congress must do something special, beyond setting an exception-free deadline, to tag a statute of limitations as jurisdictional and so prohibit a court from tolling it." *Id.*

In *Volpicelli v. United States*, 777 F.3d 1042 (9th Cir. 2015), the Ninth Circuit Court of Appeals held that 26 U.S.C. Section 6532(c) was not jurisdictional. *Id.* at 1047. There, the Plaintiff sued the United States for wrongfully seizing $13,000 in cash from the Plaintiff when he was only 10 years old. *Id.* at 1043. The Circuit Court held that the limitation period for filing a wrongful levy suit against the IRS, which requires a taxpayer to file such suit within

4

nine months of the levy, was not jurisdictional, and therefore was subject to equitable tolling. *Id.* at 1047. The Circuit Court read that section as not providing a clear statement that Congress intended this provision to be jurisdictional. *Id.* at 1044. It reasoned that Internal Revenue Code Section 6532(c) did not cast its filing deadline in "jurisdictional" terms any more than the statute at issue in *Henderson* did- a statute the U.S. Supreme Court held to be non-jurisdictional.[1] *Id.* The Appeals Court concluded that Congress' placement decision indicates that it viewed Section 6532(c)'s limitation period as a mere "claim-processing rule" rather than a jurisdictional command. *Id.* The Circuit Court reasoned that even if Section 6532(c)'s limitations period were a condition on the United States' waiver of sovereign immunity, that fact alone would not render it "jurisdictional."

Following the reasoning set forth in *Volpicelli*, Section 6532(a) is not jurisdictional because the provision does not provide a clear statement that Congress intended this provision to be jurisdictional; *see also Kwai Fun Wong*, 135 S.Ct. at 1632 (instructing that courts should not conclude that a time bar is jurisdictional unless Congress provides a "clear statement" to that effect; in applying that clear statement rule, courts should keep in mind that most time bars, even if mandatory and empathic, are nonjurisdictional; therefore, Congress must do something special to tag a statute of limitations as jurisdictional and so prohibit a court from tolling it).

First, Congress' separation of the filing deadline in Section 6532(a) from the waiver of sovereign immunity found in 28 U.S.C. Section 1346(a)(1), as well as the placement

---

[1] *Henderson ex rel Henderson v. Shineseki*, 562 U.S. 428 (2011). In *Henderson*, the U.S. Supreme Court held the statute that permitted a veteran to appeal the Board of Veterans' Appeals denial of his claim to the United States Court of Appeals for Veterans Claims was not jurisdictional. *Id.* at 438. The statute required that the notice of appeal must be filed within 120 days after the date when the Board's final decision is properly mailed. 38 U.S.C. Section 7266(a). *Id.* at 431. The U.S. Supreme Court held that a veteran's failure to file a notice of appeal within the 120-day period did not have "jurisdictional" consequences, and thus, was subject to equitable toiling. *Id.* at 441.

5

of Section 6532 in the Internal Revenue Code under subtitle labeled "Procedure and Administration," is a strong indication that the time bar is not jurisdictional. Second, the time limitation is purely procedural and has no substantive impact on the amount of recovery. It speaks only to a claim's timeless and not to a court's power. Third, the recovery of a wrongfully withheld refund is akin to the traditional common law tort of conversion. Fourth, the deadline set forth in Section 6532(a) is not cast in jurisdictional terms and the language/text used does not have any jurisdictional significance. Finally, the text does not define a federal court's jurisdiction over tort claims generally, does not address its authority to hear untimely suits, or in any way limit its usual equitable powers.

For the reasons discussed above, Section 6532(a) two-year statute of limitations is not jurisdictional and since the Defendant failed to timely raise an affirmative statute of limitations defense by filing a motion to dismiss in this case, the Defendant should be foreclosed from claiming the Section 6532(a) statute of limitations as a defense at this late stage of litigation for the 2007, 2010, and 2011 tax years.

**IV. Disaster Relief Under Section 7508A**

Section 6532(a) statute is also tolled under Section 7508A. On March 13, 2020, President Donald Trump declared a nationwide emergency under Section 501(b) of the Robert Stafford Disaster Relief and Emergency Assistance Act (Strafford Act), 42 U.S.C. Section 5121-5207, as a result of the COVID 19 pandemic (Nationwide Emergency Declaration). *See* Presidential Proclamation 9994 (March 13, 2020). The President also approved major disaster declarations for each of the 50 states pursuant to Section 401 of the Strafford Act. *See* Letter to Federal Agencies on an Emergency Determination for the Coronavirus Disease 2019 (COVID-19) Pandemic Under the Robert T. Strafford Disaster Relief and Emergency Assistance Act, 20-20 Daily Comp. Pres. Doc. 159 (Mar. 13, 2020).  On March 13, 2020, the

6

administrator of the Federal Emergency Management Agency declared California a major disaster area. *See* FEMA Declaration 3428 (March 13, 2020). As with other state disaster declarations, the California disaster declaration identified the pandemic conditions warranting the declaration as "beginning on January 20, 2020, and continuing." *See Id.*

The IRS subsequently issued a series of notices in which the stated purpose was to provide relief under Section 7508A(a) pursuant to the Nationwide Emergency Declaration. Section 7508A(a) generally gives the Secretary of the Treasury (Secretary) or his delegate (i.e., the IRS) the discretion to postpone certain tax-related deadlines for up to one year for those taxpayers he or determines to be affected by a federally declared disaster. *See* Notice 2022-36. In 2019, Congress amended Section 7508A to add a 60-day postponement period. On November 15, 2021, Congress updated Section 7508A(d) to clarify which acts the 60-day postponement applies to. It also clarified that the 60-day period begins to run on the incident date specified in the disaster declaration and ends on the later of 60 days after the incident date or the date of the disaster declaration.

The Tax Court held in *Abdo v. Commissioner*, 162 T.C. No. 7 (Apr. 2, 2024), that a taxpayer's petition filed during the early days of COVID-19 pandemic was timely under Section 7508A(d) of the Internal Revenue Code. In analyzing the Section 7508A regulations under the now-overruled framework of *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). In *Chevron*, the Supreme Court set forth a two-step approach to the review of questions of law:

"If Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissive construction of the statute." *Chevron*, 467 U.S. at 843, 104 S.Ct at 2782.

7

To uphold the agency's interpretation, the court need not conclude "that the agency construction was the only one it permissibly could have adopted, or even the reading the court would have reached if the question had arisen in a judicial proceeding." *See Id.* It need only conclude that the agency's interpretation was a "permissible" one. *See Id.*

Applying the two-part *Chevron* test, the Tax Court determined that Section 7508A provides an unambiguous, self-executing, and mandatory 60-day postponement period for filing a petition with the Tax Court following a federally declared disaster and invalidated Treasury Regulation Section 301.7508A-1(g)(1) and (2) to the extent they were inconsistent with Section 7508A(d). *Chevron* has been overruled by the Supreme Court in *Loper Bright Enterprise v. Raimondo*, 603 U.S. 369 (2024). In *Loper Bright*, the Supreme Court overruled *Chevron's first step*, the Court asked whether Congress spoke to the issue at hand. If yes, the Court followed Congress' wishes. If the statute was silent or ambiguous, under the second step, the Court asked whether the regulation was a "permissible construction" of the statute. Under *Chevron*, a court was not to enforce its own view, but instead was supposed to defer to the expertise of the agency that had issued the regulation as long as the regulation was reasonable- commonly referred to as the Chevron deference. Now, under *Loper Bright*, courts are required to "exercise their independent judgment in deciding whether an agency has acted within its statutory authority. "

Even though *Abdo* was overruled by the Supreme Court in *Loper Bright*, the fact the Tax Court found Section 7508A to be unambiguous and did not defer to the IRS's interpretation means that the outcome of this case would be unchanged under *Loper Bright*. If anything, this court may have additional ability to exercise its own judgment and expand the confines of Section 7508A to include refund claims. Thus, although *Abdo* discussed the implications of filing a petition with the Tax Court during the COVID-19 pandemic, the

8

reasoning of *Abdo* should be expanded refund claims filed with the IRS.

In *Abdo*, the Tax Court found that Section 7508A(d) automatically postpones most filing deadlines for at least 60 days after specified disasters even when the IRS does not issue guidance authorizing the relief. Before *Abdo*, Treasury Regulations stated that relief under Section 7508A(d) took effect only when the IRS authorized it. The Tax Court also noted that while the original disaster declarations did not specify an end date, they were amended in 2023 and, in relevant part, provided that "the incident period for all COVID-19 major disaster declarations and the nationwide emergency declaration will close effective May 11, 2023." This means that May 11, 2023 is the "latest incident date so specified" under Section 7508A(d) and, therefore, in conjunction with the holding in *Abdo*, that the period automatically disregarded for the purpose of acts described in Section 7508A is January 20, 2020, through July 10, 2023 (60 days after May 11, 2023).

Section 7508A provides that, in the case of any "qualified taxpayer," the period beginning on the earliest incident date specified in the declaration to which the relevant disaster area relates and ending on the date that is 60 days after the latest incident date so specified shall be disregarded. Section 7508A(d)(2)(A) defines a "qualified taxpayer" to include an individual whose principal residence is located in a disaster area. Section 7508A(d)(3) defines a disaster area as an area determined by the president to warrant assistance under the Stafford Act. The Plaintiff was a California resident at all relevant times in this case. Since the Plaintiff lived in California at all relevant times during this case, he is therefore a qualified taxpayer entitled to an automatic 60-day postponement period for purposes of the Section 6532(a) two-year statute of limitations starting from January 20, 2020, the earliest incident date specified in the California disaster declaration, to at least July 10, 2023 should be disregarded in determining Section 6532(a)'s two-year statute of limitations. On February 23, 2023, the Plaintiff filed his complaint

with this Court. The Plaintiff filed his complaint within the automatic 60-day postponement period for purposes of Section 6532(a) and as a result, the 2007, 2010, and 2011 should not be jurisdictionally barred.

## V. The IRS Did Not Properly Apply Payments From the 2016 Tax Year to the 2007 Tax Year

The Defendant applied a portion of Plaintiff's 2016 payments to the 2007 tax year. The Plaintiff filed administrative refund claims for both years. The Defendant claims that there is no triable issue for the 2007 and 2016 tax years. The Defendant applied a portion of his 2016 payments to the 2007 penalty assessment. The IRS should not assess delinquency penalties if a taxpayer can show reasonable cause. The reasonable cause exception to delinquency penalties has been generally interpreted to mean the exercise of ordinary business care and prudence. *United States v. Boyle*, 269 U.S. 241, 246 (1985). Reliance on the advice of a tax professional may constitute reasonable cause and good faith, if under all the facts and circumstances, the reliance is reasonable and in good faith. *Id.* The Plaintiff relied on Sandy Magid's professional skills to determine his 2005 tax liability and carryover losses. While there are few standards by which to judge the quality of the advice a tax advisor provides to a taxpayer, Circular 230 sets forth the conduct that tax practitioners must follow, or be subject to disciplinary action by the IRS. Circular 230 is intended to provide minimum standards tax advisors should provide in providing tax guidance. Indeed, an ordinary taxpayer cannot be expected to know the requirements for tax professionals. Circular 230 provides that a practitioner may not sign a return as a preparer if the practitioner determines that a return contains a position that does not have a realistic possibility of being sustained on its merits unless the position is not frivolous and is adequately disclosed to the IRS. *See* Section 10.34(a)(1) of Circular 230. Circular 230 also provides that a practitioner advising a client to

take a position on a return, or preparing or signing a return as a preparer, must inform the client of the penalties reasonably likely to apply to the client with respect to the positions advised, prepared, or reported. *See* Section 10.34(a)(2) of Circular 230. The Plaintiff had relied on Sandy Magid's professional expertise to prepare his 2005 tax returns and claim a net operating loss. Sandy Magid knew or should have known, that the net operating loss claimed on Plaintiff's 2005 tax return may be disallowed by the IRS. Under Circular 230, as Plaintiff's tax preparer and tax professional signing Plaintiff's return, Sandy Magid had a duty to advise the Plaintiff regarding the hazards of claiming the net operating loss on his 2005 income tax returns. The record indicates this was not done.

The Plaintiff also obtained advice from Mattaniah Eytan regarding the 2005 net operating loss. A person who provides advice with respect to "the existence, characterization or amount" of an entry on a return is a preparer if the entry constitutes a substantial portion of the return. *See* Treas. Reg. Section 301.7701-15(a)(2). Mattaniah Eytan was a return preparer for the 2005 tax year because he provided the Plaintiff with advice regarding the net operating loss claimed on his 2005 income tax return. As a return preparer, Mattaniah Eytan should have advised the Plaintiff regarding the hazards of claiming the net operating loss. The record indicates that this did not take place.

The IRS assessed significant penalties against the Plaintiff because Sandy Magid and Mattaniah Eytan failed to properly advise the Plaintiff regarding the 2005 net operating loss. The Plaintiff made reasonable attempts to comply with the provisions of the Internal Revenue Code and its regulations by retaining two professionals that he believed were competent. However, both the professionals that the Plaintiff retained failed to exercise ordinary and reasonable care in the preparation of his 2005 tax return and the net operating loss that ultimately triggered the 2007 penalty assessment. Since the Plaintiff acted reasonably by relying

on professionals to claim the 2005 net operating loss, there is a triable issue as to whether or not the IRS properly assessed the 2007 penalty against the Plaintiff and applied payments from the 2016 tax year to the 2007 tax year. Had the Defendant not improperly transferred payments that the Plaintiff made for the 2016 tax year to the 2007 tax year, the 2016 delinquency penalty and estimated tax penalty would have been reduced. Not only is there a triable issue of fact regarding the 2007 penalty assessment, there is also a triable issue of fact regarding the delinquency penalty and estimated tax penalty that was incorrectly assessed against the Plaintiff for the 2016 tax year as a result of the improper allocation of his tax payments from the 2016 tax year to the 2007 tax year.

## VI. CONCLUSION

Plaintiff respectfully asks this Court to deny the Plaintiff's request to dismiss his claims for the 2007, 2010, and 2011 tax years for lack of jurisdiction. The Plaintiff also respectfully asks this Court ***not*** to dismiss Plaintiff's refund claim as a matter of law for the 2016 tax year.

Respectfully Submitted,

Dated: May 29, 2025

/s/ Anthony V. Diosdi
Anthony V. Diosdi
Diosdi & Liu, LLP
505 Montgomery St. 11th Floor
San Francisco, CA 94111
Telephone: 415-318-3990
Fax: 415-335-7922
E-mail: adiosdi@sftaxcounsel.com

Attorney for Plaintiff

12