IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 24-267 T
(Judge Molly R. Silfen)

TERRY W. KWONG,

                                                      Plaintiff,

v.

THE UNITED STATES,

                                                      Defendant.

**DEFENDANT'S ADDITIONAL BRIEFING IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT**

                              TANNER STROMSNES
                                 Attorney of Record
                              ANDI M. HAMMACK
                              JASON BERGMANN
                                 Assistant Chief, Court of Federal Claims Section
                              Attorneys for the United States
                              U. S. Dept. of Justice, Tax Division
                              Court of Federal Claims Section
                              Post Office Box 26
                              Ben Franklin Station
                              Washington, D.C. 20044
                              (202) 307-6547
                              (202) 514-9440 (Fax)
                              tanner.stromsnes@usdoj.gov

## TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Abdo v. Commissioner*,
  162 T.C. 148 (2024) ............................................................................................................. 6–7

*Commissioner v. Sunnen*,
  333 U.S. 591 (1948) ................................................................................................................. 5

*Crane v. Hahlo*,
  258 U.S. 142, 42 S.Ct. 214, 66 L.Ed. 514 (1922) .................................................................... 3

*Green-Thapedi v. United States*,
  549 F.3d 530 (7th Cir. 2008) ................................................................................................... 5

*Jackson v. United States*,
  100 Fed. Cl. 34 (2011) ............................................................................................................. 2

*Khouri v. Commissioner*,
  T.C. Memo 2002-170 (2002). Notice 2001–63 ................................................................... 1–2

*Landgraf v. USI Film Prods.*,
  511 U.S. 244 (1994) ................................................................................................................. 3

*Schaeffler v. United States*,
  889 F.3d 238 (5th Cir. 2018) ................................................................................................. 10

*Scott v. Commissioner*,
  T.C. Memo 2002-193 (2002 ..................................................................................................... 2

*Vernon v. Cassadaga Valley Cent. School Dist.*,
  49 F.3d 886 (2d Cir. 1995) ................................................................................................... 3–4

*Yates v. United States*,
  150 Fed. Cl. 128 (2020) ........................................................................................................... 5

# TABLE OF AUTHORITIES

**Page(s)**

**Statutes:**

Internal Revenue Code (26 U.S.C):

§ 6402 .................................................................................................................... 4, 10

§ 6511 .................................................................................................................... 5, 9–11

§ 6532 .................................................................................................................... 8

§ 6654 .................................................................................................................... 6, 10

§ 7422 .................................................................................................................... 10

§ 7508 .................................................................................................................... *Passim*

**Other Authorities:**

26 C.F.R. § 301.7508 ............................................................................................ 2, 8

H.R. Rep. 116-379 (Jan. 21, 2020) ....................................................................... 8–9

Defendant addresses the questions raised in the Court's Amended Order (Dkt. 35) for additional briefing as follows:

### I. Does section 7508A provide for tolling or just a postponement of deadlines? What does either interpretation mean for the timing of Mr. Kwong's claims for 2007, 2010, and 2011?

Section 7508A provides only for postponement of deadlines; it does not toll deadlines. In other words, a period "disregarded" pursuant to 26 U.S.C. § 7508A[1] only extends the due date for various acts if that due date falls within the disregarded period. It does not affect deadlines that fall outside of the disregarded period. Indeed, § 7508A is titled "Authority to *postpone* certain deadlines[.]" § 7508A (2019); (2021) (emphasis added).

The Tax Court in *Khouri* analyzed Notice 2001–63, in which the Commissioner granted relief to affected taxpayers pursuant to § 7508A, and found that it only postponed deadlines. *Khouri v. Commissioner*, T.C. Memo 2002-170, at *5 (2002). Notice 2001–63 stated in pertinent part:

> The Internal Revenue Service has determined that the due date for all federal tax obligations falling between September 10, 2001, and September 24, 2001, is postponed to September 24, 2001. This postponement of time covers the filing of returns and claims for refund, the payment of tax (including estimated tax payments), making elections, *and filing any other Federal tax documents.* The postponement does not apply to deposits of federal taxes.

*Id.* (emphasis original). The court found that Notice 2001–63 "states that the deadline for all Federal tax obligations falling between September 10, 2001, and September 24, 2001, is postponed to September 24, 2001. Because the deadline for filing a timely petition in this case expired on October 4, 2001, it follows that such deadline is not postponed under Notice 2001–

---

[1] All statutory citations are to the Internal Revenue Code (26 U.S.C.) unless otherwise specified.

63." *Id.* Thus, the *Khouri* court recognized that relief granted under § 7508A is a postponement, not a tolling.[2]

Other courts have come to the same conclusion with regard to relief granted under § 7508A. *See Scott v. Commissioner*, T.C. Memo 2002-193 (2002) ("Notice 2001–63, *supra*, does not provide relief to petitioners because it extended the time for filing Federal tax documents only to September 24, 2001; the 90th day after the mailing of the deficiency notice to petitioners was September 25, 2001, and petitioners mailed their petition on October 3, 2001. Thus, Notice 2001–63, *supra*, does not apply here."); *see also Jackson v. United States*, 100 Fed. Cl. 34, 45 (2011) (in analyzing § 7508A and notices issued related to Hurricane Katrina, finding that "[p]laintiffs, however, cannot claim relief from the statute, notices, and publication, since they do not fall within the extended time periods described therein.").

The relevant Treasury regulation also provides that "[w]hen an affected taxpayer is required to perform a tax-related act by a *due date that falls within the postponement period*, the affected taxpayer is eligible for postponement of time to perform the act until the last day of the period." 26 C.F.R. § 301.7508A-1(b)(2) (emphasis added).

Accordingly, in accordance with the title of the statute and the above-cited caselaw and regulation, § 7508A provides only for a postponement of deadlines that fall within the disregarded period, and does not toll deadlines.

---

[2] That the relief in *Khouri* was granted by the Commissioner under § 7508A(a) as opposed to the mandatory postponement period is of no consequence. The relevant language in the version of § 7508A cited in *Khouri* and the mandatory postponement period in the 2019 and 2021 versions of § 7508A is the same—they both provide for a period that may (or shall) be "disregarded." *Compare* § 7508A(a) (2001) *with* § 7508A(d) (2019) *and* § 7508A(d) (2021).

2

## II. When can Congress retroactively change a statute of limitations, and what is the impact of that change on pending claims?

Amending a statute of limitations is within Congress' general power. When Congress amends a statute of limitations, the amended statute of limitations generally applies to cases filed after the amendment, even if the underlying claim accrued before the amendment. *See Vernon v. Cassadaga Valley Cent. School Dist.*, 49 F.3d 886, 889 (2d Cir. 1995).

Multiple reasons support the above. First, "applying a new or amended statute of limitations to bar a cause of action filed after its enactment, but arising out of events that predate its enactment, generally is not a retroactive application of the statute." *Id.* (citation omitted). That is because in such cases, "the statute is applied to conduct that occurs after the statute's enactment—plaintiff's filing of the complaint—not the defendant's allegedly unlawful acts." *Id.* Applying an amended statute of limitations to a case filed after the amendment "impair[s] no rights possessed by either party, *see Crane v. Hahlo*, 258 U.S. 142, 147, 42 S.Ct. 214, 216, 66 L.Ed. 514 (1922) ('No one has a vested right in any given mode of procedure.'), increase[s] neither party's liability, nor impose[s] any new duties with respect to past transactions." *Id.* at 890.

Indeed, the Supreme Court in *Landgraf* recognized that "[e]ven absent specific legislative authorization, application of new statutes passed after the events in suit is unquestionably proper in many situations." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 273 (1994). In analyzing the Age Discrimination in Employment Act's amended statute of limitations, the *Vernon* court applied *Landgraf* and found that the "statute cannot be understood to operate retroactively in the manner criticized in *Landgraf*, and its application here was 'unquestionably proper.'" *Vernon*, 49 F.3d at 890 (citing *Landgraf*, 511 U.S. at 273).

3

Judge Cabranes noted in his *Vernon* concurrence his concerns about the application of an amended statute of limitations to a person who never had an opportunity to comply with the amended statute. *See id*. at 891. However, Judge Cabranes still agreed that the "new 90-day period should apply to bar plaintiffs' claims[.]" *Id.* And in this case, Plaintiff still had nearly a year to file suit after § 7508A was amended, which is far longer than the 90 days found sufficient in *Vernon*.

An amended statute of limitations will generally apply to a case filed after the amendment, even if the claim accrued prior to the amendment. *See id.* at 889. Such an application is not "retroactive." *Id.* Further, for the reasons discussed in response to Question 5, applying the 2019 version of § 7508A still makes Plaintiff's claim untimely.

### III. How did the change to section 7508A in November 2021 impact claims that were not yet filed?

As discussed in response to Question 2 and in Defendant's Reply, generally claims which accrue prior to November 2021, but for which suit is filed after November 2021, would be subject to the 2021 amendment. Dkt. 31 at 3–4. However, as will be discussed in response to Question 5, the 2019 version of § 7508A should be applied in this case because the disaster declaration preceded the 2021 amendment. But ultimately, regardless of which version of § 7508A applies here, Plaintiff's claim is still untimely.

### IV. Can Mr. Kwong request a refund for his 2016 overpayment of $316,590 through his timely 2016 claim?

No. Section 6402(a) provides that "[i]n the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment[.]" Thus, the Commissioner has the

authority to transfer overpayments to satisfy tax liabilities in other years, and Plaintiff has not challenged that authority.

There can be no freestanding claim regarding the transfer of the overpayment in this case. As discussed in response to Question 6, the transfer of the overpayment sets the payment date for the year the overpayment is transferred to, putting the two-year period in § 6511(a) for filing a refund claim in motion. *See* § 6511(a) ("Claim for credit or refund of an overpayment . . . shall be filed by the taxpayer within 3 years from the time the return was filed or *2 years from the time the tax was paid*[.]") (emphasis added). In the event an overpayment is transferred to satisfy tax liabilities in another year, the taxpayer must file suit for the year the credit is transferred to. *See Green-Thapedi v. United States*, 549 F.3d 530, 532 (7th Cir. 2008) ("[W]hen the IRS applies an overpayment as a credit to a liability for a separate tax year, the taxpayer must file a refund claim for the year in which the IRS applied the credit.") (citations omitted); *see also Commissioner v. Sunnen*, 333 U.S. 591, 598 (1948) ("Each year is the origin of a new liability and of a separate cause of action."). A judge on the Court of Federal Claims has also come to the same conclusion. *See Yates v. United States*, 150 Fed. Cl. 128, 138 (2020) ("When the IRS processed payments received for other tax years, it credited certain amounts toward Mr. Yates's 2006 tax liability instead of issuing a refund. The only way that Mr. Yates could obtain a refund of these amounts in this court would be by filing a refund claim for the 2006 tax year.") (citations omitted).

Plaintiff could only file a challenge in the year the overpayment was transferred to, which is the 2007 tax year.[3] Plaintiff did challenge the 2007 penalties, but that claim is untimely because Plaintiff did not file suit within two years of the IRS' denial of that claim.

**V.    Related to question 3, in amending section 7508A in November 2021, Congress specified that the amendment "shall apply to federally declared disasters declared after the date of enactment of this Act." 167 Cong. Rec. S5247-01. What impact did the amendment have with respect to the covid-19 pandemic, which was a federally declared disaster beginning in March 2020, before the amendment? When did the federal disaster declaration for the covid-19 pandemic end?**

Defendant originally argued that the 2021 version of § 7508A applied to Plaintiff's claim in Defendant's Reply (Dkt. 31). Having referred to the Congressional Record citation in this Question, taken together with the fact that the relevant declaration occurred prior to the 2021 amendment, the 2019 version of § 7508A applies here. However, Plaintiff's claim is still untimely regardless of whether the 2019 or the 2021 version of § 7508A applies.

The 2019 version of § 7508A(d)[4] provided in relevant part that the period "beginning on the earliest incident date specified in the declaration" and "ending on the date which is 60 days after the latest incident date *so specified*, shall be disregarded in the same manner as a period specified under subsection (a)." § 7508A(d) (2019) (emphasis added). The California disaster declaration cited by Plaintiff has an earliest incident date of January 20, 2020, so that is the date from which the period would begin running. FEMA Declaration 3428; *see Abdo v. Commissioner*, 162 T.C. 148, 169 (2024) ("Petitioners are therefore qualified taxpayers entitled

---

[3] Plaintiff could, and did, challenge the § 6654 penalty for failure to prepay taxes assessed in the 2016 tax year in the amount of $1,929.98. As discussed in Defendant's Motion (Dkt. 29 at 9–11) and Reply (Dkt. 31 at 5–6), that challenge is without merit.

[4] The citations to § 7508A in this section will be to the 2019 version of the statute unless otherwise specified.

to an automatic 60-day postponement period starting from January 20, 2020, the earliest incident date specified in the Ohio Disaster Declaration, to at least March 20, 2020, to file their Petition."). As Plaintiff notes, the declaration included the terms "and continuing." *Abdo*, 162 T.C. at 150–51. However, the plain language of § 7508A(d) requires that the incident date be "so specified," so an indefinite statement such as "and continuing" cannot affect the running of the mandatory 60-day period in § 7508A(d)—"and continuing" is not a date, nor is it specific.

The only incident date specified in the declaration is January 20, 2020, so that is both the "earliest incident date specified" to begin the period, as well as the "latest incident date so specified," 60 days after which the period ends. The *Abdo* court noted that January 20, 2020, was argued to be both the "earliest incident date" and the "latest incident date" specified in the declaration, and that argument was not disputed. *Abdo*, 162 T.C. at 156–57 n.7. The *Abdo* court also specifically did not address the situation where a declaration "omits an ending date or is extended." *Id.* at 169 n. 13. But because there is only one incident date specified in the declaration, January 20, 2020, it is both the "earliest incident date specified" as well as the "latest incident date so specified" within the meaning of § 7508A(d).

On February 10, 2020, FEMA and the Department of Homeland Security amended the notices to make the incident period for the COVID-19 declaration close effective May 11, 2023. *See id.* at 156–57 n.8 ("The amendments provided that 'the incident period for all COVID-19 major disaster declarations and the nationwide emergency declaration will close effective May 11, 2023.'"). However, while the amendments provided that the incident *period* would close, those amendments did not specify any new incident *date* within the meaning of § 7508A(d). Thus, the amendments had no effect with regard to the mandatory period in § 7508A.

7

Further, the text of the statute and the relevant regulations also cut against Plaintiff's argument. Section 7508A(d) provides that the mandatory period "shall be disregarded in the same manner as a period specified under subsection (a)." § 7508A(d) (2019). Under § 7508A(a), "the Secretary may specify a period of up to 1 year that may be disregarded[.]" § 7508A(a) (2019). Plaintiff asks for this Court to find that the postponement period extended from January 20, 2020, through at least July 10, 2023, and that that period should be disregarded in determining § 6532(a)'s statute of limitations. Dkt. 30 at 13. That period would extend nearly three and a half years, which far exceeds the up to one-year authority given to the Commissioner to grant relief in § 7508A(a). Reading the mandatory "60-day" period in subsection (d) to far exceed the permissive one-year authority granted to the Commissioner in subsection (a) would disjoint the statute. The regulations recognize that the mandatory postponement period should not exceed the one year granted in subsection (a). *See* 26 C.F.R. § 301.7508A-1(g)(3)(ii) ("In no event will the mandatory 60–day postponement period be calculated to exceed one year.") (regulations effective June 11, 2021). The legislative history also notes that the mandatory period was intended to provide "certainty" to taxpayers in the event of disaster declaration, and it follows that the mandatory period was intended to allow affected taxpayers that certainty while the Commissioner determined whether to issue relief under the one-year authority in § 7508A(a). H.R. Rep. 116-379, at 99 (Jan. 21, 2020).

As further support for this reading, under the 2019 version of § 7508A the Commissioner's assessment and collection powers were also included in the mandatory 60-day period.[5] *Compare* § 7508A(d) (period "shall be disregarded in the same manner as a period

---

[5] The 2021 amendment of § 7508A changed the mandatory period to only apply to "subparagraphs (A) through (F) of section 7508(a)(1)," which do not include the Commissioner's activities. *See* § 7508(a)(1).

8

specified under subsection (a).") *and* § 7508A(a)(1) (period disregarded in determining "whether any of the acts described in paragraph (1) of section 7508(a) were performed within the time prescribed therefor[.]") *with* § 7508(a)(1) (including, among other things, "[a]ssessment of any tax" and "[c]ollection, by the Secretary, by levy or otherwise, of the amount of any liability in respect of any tax[.]").  Thus, under Plaintiff's argument the Commissioner also would receive the same indefinite extension of time to bring suit, assess taxes, and collect via levy.

Finally, Defendant notes the practical issues with Plaintiff's position.  If the mandatory 60-day period in § 7508(d) could be indefinitely extended, FEMA could effectively indefinitely suspend the timelines of tax administration without any input from the Secretary of the Treasury or the Commissioner.  Plaintiff's position would also call into question innumerable actions taken by this Court and the other Courts of the United States, the Commissioner, and other taxpayers prior to the closing of the incident period.  Essentially all time-sensitive acts that occurred between January 20, 2020 and July 10, 2023 could now be subject to renewed scrutiny.  The resulting uncertainty to tax administration would be to the detriment of both the government and taxpayers, and would frustrate the very purpose of § 7508A(d), which was intended to provide "certainty."  H.R. Rep. 116-379, at 99 (Jan. 21, 2020).

In sum, whether applying the 2019 or 2021 version of § 7508A to the disaster declaration and in turn Plaintiff's claim, Plaintiff's claim is untimely.

**VI.     Related to question 4, when the IRS transfers an overpayment to satisfy a debt for an earlier year, under 26 U.S.C. § 7422(d), when does a taxpayer need to file a request for a refund of that transferred money? Was Mr. Kwong's 2020 Form 843 a timely request related to the April 15, 2017, payment?**

When the IRS transfers an overpayment to satisfy a tax liability for an earlier year, a taxpayer must file a refund claim for the year the credit was transferred to within the period specified in § 6511(a).  Section 6511(a) provides that a claim for credit or refund "shall be filed

9

by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid."

In transferring an overpayment to another tax year, the tax is "paid" within the meaning of § 6511(a) when the transfer occurs. *See Schaeffler v. United States*, 889 F.3d 238, 248 (5th Cir. 2018) ("[T]he 'credit' that constitutes a payment under § 6511(a) is the credit of an overpayment under §§ 7422(d) and 6402(a)."). Thus, in this case, the overpayment transfer to satisfy the tax liabilities in the 2007 tax year on April 15, 2017,[6] started the two-year clock for Plaintiff to file a refund claim to challenge that amount transferred to his 2007 tax year.[7] Dkt. 29-1 at 61. Further, Plaintiff's Form 843 for the 2007 tax year, filed in March of 2020, was not a timely refund request related to the overpayment transfer because the 2007 Form 843 was filed more than two years after the overpayment transfer occurred. *See* § 6511(a). However, Defendant notes that seven payments of $382.65 are reflected in Plaintiff's transcripts after March 20, 2018 (i.e., within two years of Plaintiff filing his refund claim for the 2007 tax year, alleged to have been on March 20, 2020). Dkt. 29-1 at 61–62. Plaintiff's Form 843 as it relates to those seven payments would be timely under § 6511(a) and (b). *See* § 6511(b)(2)(B) ("If the claim was not filed within such 3-year period, the amount of the credit or refund shall not exceed the portion of the tax paid during the 2 years immediately preceding the filing of the claim.").

---

[6] While Plaintiff's 2007 transcript reflects the transfer occurring as of April 15, 2017, the attached 2016 transcript reflects that Plaintiff's 2016 was filed as of October 26, 2017 and that a Notice CP49 was sent out on November 6, 2017. *See* Attached Transcript at 2. The Notice CP49 notifies a taxpayer that all of part of a refund or credit was used to pay a tax debt. Even using the date November 6, 2017, Plaintiff's 2007 claim in March 2020 would still be untimely.

[7] With regard to the 2016 tax year, Plaintiff's Form 843 would be timely because March 2020 is within three years of when his 2016 tax return was filed. *See* Dkt. 29-1 at 89. However, Plaintiff can only challenge the § 6654 penalty totaling $1,929.98 in that tax year.

Defendant also notes here that Plaintiff has only challenged the penalties for 2007 and has not challenged his underlying tax liabilities for that year. Plaintiff also seeks $84,000 as his refund for the 2007 tax year. Dkt. 1 ¶ 58. Because Plaintiff has only challenged $84,000 for the 2007 tax year itself, it is unclear how Plaintiff could be entitled to the entirety of the $316,590.02 overpayment that was transferred to that year. Dkt. 29-1 at 61. At most, Plaintiff could only recover the amount that he challenges for the 2007 tax year. But as discussed in Defendant's Motion and Reply, Plaintiff's suit for 2007 is nonetheless untimely because he did not file suit within two years of the IRS' denial of his 2007 claim.

In sum, Plaintiff's 2007 claim was untimely with respect to the overpayment transferred from tax year 2016, and Plaintiff's suit regarding his 2007 claim is also untimely because he did not file suit within two years of the IRS' denial of that claim.

### VII. Conclusion

Defendant respectfully submits the above additional briefing in support of its Motion for Summary Judgment (Dkt. 29) and respectfully requests that its Motion be granted in full. [*Signature page follows*.]

September 5, 2025                                  */s/ Tanner Stromsnes*
                                                   TANNER STROMSNES
                                                   Attorney of Record
                                                   U.S. Department of Justice – Tax Division
                                                   Court of Federal Claims Section
                                                   Post Office Box 26
                                                   Ben Franklin Station
                                                   Washington, DC 20044
                                                   Voice: (202) 307-6547
                                                   Fax:   (202) 514-9440
                                                   tanner.stromsnes@usdoj.gov


                                                   JASON BERGMANN
                                                   Assistant Chief, Court of Federal Claims Section
                                                   ANDI M. HAMMACK
                                                   Trial Attorney

September 5, 2025                                  */s/ Jason Bergmann*
                                                   Of Counsel

                                                   Attorneys for the United States