IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 23-267 T
(Judge Molly R. Silfen)

TERRY W. KWONG

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

**PLAINTIFF'S ADDITIONAL BRIEFING IN SUPPORT OF RESPONSE FOR SUMMARY JUDGMENT**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Cowan v. Davis,* 2020 WL 4698968, at *1 (E.D. Cal. Aug. 13, 2020)................................3

*General Instrument Corp v. United States*, 33 Fed. Cl. 4 (1995)...................................12

*Joseph v. United States*, 2020 U.S. LEXIS 230558, at 1 (N.D. Cal. Dec 7, 2020).........................3-4

*Khouri v. Commissioner,* T.C. Memo 2002-170 (2002).........................................5

*Landgraf v. USI Film Products*, 511 U.S. 244, 273 (1994)..............................................8-9

*Loper Bright Enterprise v. Raimondo,* 603 U.S. 369 (2024)...........................................6-7

S*cott v. Commissioner*, T.C. Memo-193 (2002)......................................................5

*McKibben v. Eastern Hospitality Management, Inc.,* 288 F. Supp. 2d 723 (N.D. W. Va. 2003).........2

*Pickens v. Shoop*, 2020 WL 3128536 (S.D. Ohio, June 12, 2020)..........................................3


**Statutes:**

Internal Revenue Code (26 U.S.C):

§ 6402.....................................................................................................11

§ 6407...................................................................................................11-12

§ 6532(a)..............................................................................................Passim

§ 6652...................................................................................................11-12

§ 7422 ...................................................................................................11

§ 7508A................................................................................................Passim


**Treasury Regulation:**

Treasury Regulation § 301.6402-2(a)(1)...................................................................11

Treasury Regulation § 301.6407-1...........................................................................11

**Other Authorities:**

Anjali Sundaram, *Yelp Data Shows 60% of Business Closures Due to the Coronavirus Pandemic Are Now Permanent,* CNBC (Sept. 16, 2020). https://www.cnbc.com/2020 data-shows-60percent-of-business-closures-due-to-the-coronavirus-pandemic-are-now-permanent.htm.................................................................................................................................2

Catarina Saraiva, *U.S. Suffers Shapest Rise in Poverty Rate in More than 50 Years,* Bloomberg (Jan. 25, 2021), https://www.bloomberg.com/news/articles/2021-01-25/u-s-suffers-sharpest-rise-in-poverty-rate-in-more-than-50-years?embedded-checkout=true.................................................................................2

FEMA Policy Issuance Memo (March 30, 2023), https://www.fema.gov/sites/default/files/documents/fema_policy-issuance-memo-covid-19-programmatic-deadlines-signed_0.pdf.................................................................................4

Gavin Newsom Proclamation of a State of Emergency (March 4, 2020), https://www.gov.ca.gov/wp-content/uploads/2020/03/3.4.20-Coronavirus-SOE-Proclamation.pdf.................................................................................................................................4

Manny Fernandez et. at, *The Virus is Devastating the U.S., and Leaving an Uneven Toll,* (Dec. 4, 2020), https://www.nytimes.com/united-states-surge.htm.................................................................2

*Status of State COVID-19 Emergency Orders,* Nat'l Governors Ass'n (last update Dec. 17, 2020), http://www.nga.org/state-covid-19-emergency-orders.................................................................2

*The Employment Situation,* March 2020, Bureau of Labor Stats, *The Employment Situation, April 2020,* Bureau of Labor Stats updated Sept. 2020.................................................................2

Zachary Parolin et al., Monthly Poverty Rates in the United States During the COVID-19 Pandemic (Oct 15, 2020), https://mronline.org/wp-content/uploads/2020/10/72b20-covid-projecting-poverty-monthly-cpsp-2020.pdf.................................................................................................................................1

Plaintiff addresses the questions in the Court's Amended Order for additional briefing as follows:

**I.  Does Section 7508A provide for tolling or just postponement of deadlines? What does either interpretation mean for the timing of Mr. Kwong's claims for 2007, 2010, and 2011?**

For purposes of the Internal Revenue Code, [1] the key difference between tolling and postponement is the reason for the delay and how the statutory deadline is affected. Tolling pauses the statute of limitations due to a specific event, with the clock resuming when the event is over. Postponement is a specific, government extension.  For the reasons discussed below, there is a compelling argument that Section 7508A provides for tolling of deadlines. Internal Revenue Code Section 7508A permits courts to consider the strict statute construction of the Code and human policy or equity. Section 7508A introduces equity into the Code by providing relief for people in a federally declared disaster by delaying statutory deadlines. Typically a federally declared disaster applies to a localized disaster such as a hurricane in Florida that makes it difficult to satisfy statutory requirements such as the filing of a tax return or petitioning a court for a small period of time. For example, in 2022, a federal disaster was declared in California for severe winter storms, flooding, landslides, and mudslides. This disaster declaration allowed the Internal Revenue Service ("IRS") to postpone a number of deadlines for individuals and businesses. The reason why the IRS postponed these deadlines was because it's fair to do so and it is equitable.

In March of 2020, the global sweep of COVID-19 reached the United States. One year later, the pandemic had infected close to 30 million people. Studies estimate that more than 8 million Americans fell below the poverty line during the pandemic. [2] Just six months after COVID-19 reached the United States, business review platform Yelp reported that over 160,000 businesses

---

[1] All statutory citations are to the Internal Revenue Code (26 U.S.C.) unless otherwise stated.
[2] Zachary Parolin et al., Monthly Poverty Rates in the United States During the COVID-19 Pandemic (Oct 15, 2020) htt://sttic1.squarespace. Projecting-Poverty-Monthly-CPSP-2020.pdf[http://perma.ccTLC5];Catarina Saraiva, *U.S. Suffers Shapest Rise in Poverty Rate in More than 50 Years,* Bloomberg (Jan. 25, 2021), https://www.bloomberg.cc 01-25/u.s-suffers-shapest-rise-in-poverty-rate-in-more-than-50-years{https://perma.cc/69PNYG].

listed on its website had closed, with approximately 60 percent of those closures being permanent. [3]
The United States also saw a historically unprecedented increase in the unemployment rate to 14.7
or 23.1 million persons. [4] Almost a year into the pandemic, while countries like China and New
Zealand reached low case levels, American infection rates experienced a second surge. [5] Almost all
government state of emergency declarations remained active approaching the one-year mark of the
pandemic. [6] The automatic 60-day postponement period provided by the IRS starting in March of
2020 did little to aid many taxpayers who were prevented by pandemic related complications from
meeting crucial deadlines. Taxpayers missed the 60-day postponement deadlines for a whole host
of understandable reasons. For example, some taxpayers suffer from a more severe form of
COVID-19, to the point of requiring hospitalization. They may be responsible for caring for sick
ones whose care options were unavailable due to the pandemic. Their employment obligations may
be a barrier to timelines, especially those who have become underemployed as a result of the
economic downturn or who must compensate for another source of household income
disappearing.

Courts have recognized the tolling of the statute of limitations where plaintiffs were unable
to timely file due to circumstances which gave rise to a declared state of emergency. For example,
in *McKibben v. Eastern Hospitality Management, Inc.,* 288 F. Supp. 2d 723 (N.D. W. Va. 2003), a
district court ruled in favor of plaintiffs when inclement weather prevented them from filing a
personal injury claim within the statute of limitations. On March 30, 2020, the Eastern District of

---

[3] Anjali Sundaram, *Yelp Data Shows 60% of Business Closures Due to the Coronavirus Pandemic Are Now Permanent,*
CNBC (Sept. 16, 2020). https://www.cnbc.com/2020
data-shows-60percent-of-business-closures-due-to-the-coronavirus-pandemic-are-now-permanent.htm.
[4] *The Employment Situation,* March 2020, Bureau of Labor Stats, *The Employment Situation, April 2020,* Bureau of
Labor Stats updated Sept. 2020.
[5] Manny Fernandez et. at, *The Virus is Devastating the U.S., and Leaving an Uneven Toll,* (Dec. 4, 2020),
https://www.nytimes.com/united-states-surge.htm
[6] All fifty states and the federal government declared states of emergency in response to the pandemic. *See Status of
State COVID-19 Emergency Orders,* Nat'l Governors Ass'n (last update Dec. 17, 2020),
http://www.nga.org/state-covid-19-emergency-orders.

California granted prisoner Robert Wesley Cowan's motion to prospectively equitably toll the limitation period prescribed by 28 U.S.C. Section 2244, the federal habeas statute, from May 15 to August 13. [7] The court allowed tolling on the basis that "emergency conditions brought about by [the] pandemic had and would prevent petitioner's completion of the petition to be filed … notwithstanding the exercise of reasonable diligence. It found that, "notwithstanding the continuing exercise of clearly reasonable diligence, the COVID-19 pandemic makes it unlikely and very well impossible that a complete federal habeas petition … can be completed and filed prior" to the deadline. [8] Similarly, in *Pickens v. Shoop*, 2020 WL 3128536 (S.D. Ohio, June 12, 2020), the district court emphasized its agreement that pandemic-related challenges should warrant the application of the tolling of the statute of limitations. [9] The court acknowledged the impact of the declared state of emergency "..likely stood in the way of Pickens timely filing a completed petition."[10] Courts have extended the COVID-19 related tolling to administrative disputes. In *Joseph v. United States*, 2020 U.S. LEXIS 230558, at 1 (N.D. Cal. Dec 7, 2020), a California district court considered an appeal from a United States Department of Agriculture (USDA) decision to disqualify Save More Food Market, owned by the plaintiffs, from participation in the Supplemental Nutrition Assistance Program (SNAP). Based on analysis of the store's SNAP transactions, the agency concluded that the plaintiffs were engaging in "trafficking" of SNAP benefits. 7 U.S.C. Section 2023(a)(13) provides that plaintiffs have thirty days to file a complaint to obtain judicial review of the USDA's determination. The plaintiffs filed their complaint thirty-six days late, but they argued that they should be eligible for equitable tolling because their tardiness was attributable to the stay-at-home orders which "impeded their ability to find and retain an attorney to prepare the lawsuit." The court agreed with the plaintiffs, describing the "public health

---

[7] *See Cowan v. Davis,* 2020 WL 4698968, at *1 (E.D. Cal. Aug. 13, 2020).
[8] *Id.* at 6.
[9] *Id*. at *2-3.
[10] *Id* at *3.

crises and resulting restrictions on civil and personal life" as "extraordinary circumstances by any measure."[11] The one crucial difference between COVID-19 cases and a tolling case tolling the statute of limitations because of a natural disaster is that the COVID-19 pandemic lasted over two years, while many other emergencies typically last a few days. Because of the length and severity of the COVID-19 pandemic, Section 7508A should provide for tolling for the entire length of the COVID-19 pandemic disaster declaration beginning on the March 4, 2020[12], the date of the disaster declaration by California Governor Newsom , and ending on May 11, 2023, the date FEMA and the Department of Homeland Security declared the incident period for all COVID-19 disaster declarations closed[13].  Although this seems to be an extended period for the postponement of a deadline for purposes of Section 6532(a), the more than three-year COVID-19 disaster was absolutely unprecedented in terms of the scope and the magnitude of its impact.  Many remember the fear or terror that even seeing a stranger had for those months. And we may be past the worst of COVID-19 now because vaccines have become widely available, but for a significant period of time during the COVID-19 disaster declaration vaccines were not adequately produced nor widely available to the public. If this court were to determine that Section 7508A tolled Section 6532(a)'s two year statute of limitations, the two-year statute of limitations deadline for filing refund suits for the 2007, 2010, and 2011 may be tolled until May 11, 2023 (the date FEMA and the Department of Homeland Security declared the COVID-19 nationwide emergency declaration closed). In the alternative, the Defendant claims that the IRS only has discretion to postpone tax-related deadlines for up to one year. On March 4, 2020, California Governor Newsom declared a state of emergency to help California prepare for the broader spread of COVID-19. Assuming the IRS had only the

---

[11] *Id.* at 3-4.
[12] Gavin Newsom Proclamation of a State of Emergency (March 4, 2020),
https://www.gov.ca.gov/wp-content/uploads/2020/03/3.4.20-Coronavirus-SOE-Proclamation.pdf
[13]FEMA Policy Issuance Memo (March 30, 2023),
https://www.fema.gov/sites/default/files/documents/fema_policy_issuance-memo-covid-19-programmatic-deadlines-signed_0.pdf

ability to delay filing deadlines as the result of an emergency, Section 7508A could toll the Plaintiff's filing deadline one-year.  The Defendant denied Plaintiff's refund claims on September 23, October 9, and October 13, 2020 for tax years 2011, 2010 and 2007 respectively.

The Defendant claims that Section 7508A only provides for postponement of deadlines and cites *Khouri v. Commissioner,* T.C. Memo 2002-170 (2002) and *Scott v. Commissioner*, T.C. Memo-193 (2002) to support its position. To determine when the postponement deadline would begin and end, it is important to examine Section 7508A in detail. On March 20, 2020, the Plaintiff filed administrative refund claims with the IRS for the 2007, 2010, 2011 tax years. The IRS disallowed these refund claims on October 13, 2020, October 9, 2020, and September 23, 2020 respectively. Since the Plaintiff filed his refund claims and the IRS rejected his refund claims well before the enactment of the 2021 version of Section 7508A, the 2019 version of Section 7508A applies to this case. The 2019 version of Section 7508A provides  a mandatory 60 day extension (1) in the case of any qualified taxpayer (A) beginning on the earliest incident date specified in the declaration to which the disaster area" and (B) ending on the date which is 60 days after the latest incident date so specified. The Plaintiff is a "qualified taxpayer" because he was an individual whose principal residence was in California, an area that was located in a disaster area. For purposes of Section 7508A, the term "so-specified incident" refers to the earliest and latest dates of a presidential or state-declared disaster.  The California disaster declaration regarding COVID-19 took place on March 4, 2020, so that is the date from which the period would begin to run. The term "latest incident date" in Section 7508A is specific because it defines the end point of the postponement date. Disasters are not always single-day events. The "latest incident date" is used to provide relief for events that unfold over several days, weeks, months, or even years. By using the latest end date, the IRS is supposed to ensure that the automatic extension period fully covers the entire span of the disaster. COVID-19 was not one outbreak. COVID-19 hit California and the rest

of the U.S. in "waves." The COVID-19 "waves" describes distinct periods of increased infection rates, often driven by new variants. As a result of the sustained rise in infection rates that lasted for years, COVID-19 cannot be described as a single-day event or "one incident date declaration," but rather an event that unfolded over a period that lasted a number of years or a "continuing" incident. The varying severity of the pandemic is the reason why FEMA and the Department of Homeland Security extended the COVID-19 declaration to May 11, 2023 and is thus the latest "incident date" for purposes of tax related deadlines. Since the Plaintiff was a qualified taxpayer, under the the exact wording of the 2019 version of Section 7508A, he is entitled to an automatic 60-day postponement period to file suit under Section 6532(a) starting March 4, 2020, the earliest incident date specified in the California Disaster Declaration, to at least May 11, 2023 if Section 7508A provided for a postponement of deadlines. Under verbiage of Section 7508A, the earliest postponement date to file suit for the 2007, 2010, and 2011 tax years under Section 6532(a) to file suit would be May 11, 2023. The Plaintiff filed suit for the 2007, 2010, and 2011 tax years on February 23, 2023. If the postponement date to file suit would be May 11, 2023, the Plaintiff would have timely filed suit for purposes of Section 6532.

The Defendant believes that the 2019 version of Section 7508A provides only a 60-day postponement period starting at the earliest incident date of the Disaster Declaration and has applied this 60-day postponement date to millions of taxpayers. The 60-day postponement period completely ignores the 2019 version of Section 7508A which provides for an ending date which is 60-days after the last incident date so specified. Recently, in *Loper Bright Enterprise v. Raimondo,* 603 U.S. 369 (2024) the Supreme Court overruled more than four decades of deference to federal agencies known as the *Chevron* doctrine. Under the *Chevron* doctrine, federal courts were often required to defer to "permissible" agency interpretation of the statutes those agencies administer-even when a reviewing court reads the statute differently. The Supreme Court held in

*Loper-Bright* that the Administrative Procedure Act ("APA") requires courts to exercise their independent judgment in deciding whether an agency such as the Department of Treasury and the IRS have acted within its statutory authority, and courts may not defer to an agency interpretation of the law simply because a statute is ambiguous. There is nothing in the plain language of the 2019 version of Section 7508A that limits the postponement date to 60 days. Since the Department has misinterpreted the 2019 version of Section 7508A, this Court may interpret the statute in this case.

The Defendant next argues that Section 7508A(d) limits the period of time that should be disregarded in determining Section 6532(a)'s statute of limitations to one year. Assuming Defendant's position is correct, this Court has the ability to limit the postponement period for a year, as discussed in Defendant's supplemental brief. If the postponement period would be limited to one-year, the earliest incident date would be March 4, 2020 and the mandatory postponement period would be limited to a period of one year or March 4, 2021 in this case. It should be emphasized that the IRS rejected the Plaintiffs 2007, 2010, and 2011 administrative refund claims in September and October of 2020. Rejecting Plaintiff's administrative refund claims in the middle of a period of time that should be disregarded in determining Section 6532(a)'s state of limitations undermines the very reason for providing a disregarded period. To prevent such an unfair result, the period of time in which the IRS rejected the Plaintiffs 2007, 2010, and 2011 administrative refund claims to the end of the one-year disregarded period should be disregarded or tolled in determining Section 6532(a)'s statute of limitations. In other words, Plaintiff's 2007 administrative claim that was rejected on October 13, 2020 by the IRS, would have 141 days disregarded for the time period between October 13, 2020 and March 4, 2021. Similarly, Plaintiff's 2010 administrative claim that was rejected on October 9, 2020 by the IRS, would have 145 days disregarded for the time period between October 9, 2020 and March 4, 2021. Plaintiff's 2011 claim, rejected on September 23,

2020 by the IRS, would have 161 days disregarded for the time period between September 23, 2020 and March 4, 2021.

Taking into consideration the tolling periods discussed above, the limitation period in this case for Section 6532(a)'s period would begin to March 4, 2021 for purposes of the disregarded period. Applying Section 6532(a)'s two-year statute of limitations for filing refund suits for the 2007, 2010, and 2011 tax years would be March 4, 2023. In this case, the Plaintiff filed suit on February 23, 2023. This is well within Section 6532(a)'s two-year statute of limitations for filing refund suits for the 2007, 2010, and 2011 tax years.

**II. When can Congress retroactively change a statute of limitations, and what is the impact of that change on pending claims?**

*Landgraf v. USI Film Products*, 511 U.S. 244, 273 (1994) discusses when Congress may retroactively amend a statute of limitations on a pending claim. In *Landgraf*, the Supreme Court addressed the issue of whether amendments to the Civil Rights Act of 1964, creating a right to recover compensatory and punitive damages for Title VII violations, applied to cases pending when the amendments applied only to cases which were filed after the enactment of the statute. [14] The Supreme Court set forth the following test for determining when a statute should be applied retroactively. First, the court must determine whether Congress has prescribed the proper temporal reach of the statute. If it has, "then there is no need to resort to judicial default rules" and the statute is to be applied as written. [15] However, if the statute contains no express command, the court must decide whether it would have retroactive effect, i.e. "whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." [16] Finally, if the statute will operate retroactively, "it

---

[14] 511 U.S. 244 (1994).
[15] *Id.* at 280.
[16] *Id.*

does not govern absent clear congressional intent favoring such a result." [17]

Under this framework, a statute of limitations is generally viewed as a procedural rule. Typically, procedural changes are applied prospectively to cases after the law is enacted, even if the underlying conduct occurred beforehand. However, the *Landgraf* decision provides an exception for procedural changes that would produce a "genuinely retroactive effect." In the context of a statute of limitations, a court defines a "genuinely retroactive effect" as one that would attach new, adverse legal consequences to past events. Generally, courts presume that new laws should not be applied retroactively unless Congress clearly intended for that to happen. The 2019 version of Section 7508A provided in relevant part that the period "beginning on the earliest incident date specified in the declaration" and "ending on the date which is 60 days after the latest incident date so specified, shall be disregarded. The 2021 version of Section 7508A provides (1) in general, in the case of any qualified taxpayer, the period (A) beginning on the earliest incident date specified in the declaration to which the disaster referred, and (B) ending on the date which is 60 days after the later of such earliest incident date. The new limitation period in the 2021 version of Section 7508A dramatically shortens the disregarded period by changing the ending date from "60 days after the latest incident date" to "60 days after the later of such earliest incident date" which in this case would be May 3, 2020 (60 days from the date of the disaster declaration in California). The COVID-19 pandemic emergency lasted more than  three years. Mechanically applying the 2021 version of Section 7508A would essentially shorten the applicable limitation period almost three years retroactively during the most severe pandemic in American history. This would certainly attach new and adverse legal consequences to past events. Here, Congress specified that the amendment "shall apply to federally declared disasters declared after the date of the enactment of this Act" establishes that Congress did not intend the 2021 version of Section 7508A to apply

[17] *Id.*

retroactively. To avoid taxpayers from being unfairly prejudiced at a time when literally hundreds of thousands of Americans were dying and suffering from an unprecedented pandemic, Congress saw fit not to apply the changes made to Section 7508A in November 2021 and as a result, the 2021 amended to Section 7508A do not apply to the present case.

**III. How did the change to Section 7508A in November 2021 impact claims that were not yet filed?**

Before Section 7508A(d) was amended in 2021, the 60-day period was a minimum disregard period. The language of Section 7508A(d) calls for a period to be disregarded that begins on the earliest incident specified in a disaster declaration and ends "on the date which is 60 days after the latest incident date so specified." However, as discussed in response to question 2, the 2021 amendment to Section 7508A does not apply to this case.

**IV. Can Mr. Kwong request a refund for his 2016 overpayment of $316,590 through his timely 2016 claim?**

Yes. For reasons discussed in Plaintiff's response to question 6, the Plaintiff can request a refund for his 2016 overpayment.

**V. Related to question 3, in amending Section 7508A in November 2021, Congress that the amendment "shall apply to federally declared disasters declared after the date of enactment of this Act." 167 Cong. Rec. S5247-01. What impact did the amendment have with respect to the covid-19 pandemic, which was a federally declared disaster beginning in March 2020, before the amendment? When did the federal disaster declaration for the covid-19 pandemic end?**

In November of 2021, Section 7508A was amended by the Infrastructure and Jobs Act to expand eligibility for disaster and relief. The amendments specifically applied to disasters declared for which assistance was provided after November 15, 2021. Because the amendments to Section

10

7508A apply to disasters that take place after November 15, 2021, disasters declared after December 20, 2019, and on or before November 15, 2021 are not covered under the 2021 version of Section 7508A.

**VI. Related to question 4, when the IRS transfers an overpayment to satisfy a debt for an earlier year, under IRC Section 7422(d), when does a taxpayer need to file a request for a refund of that transferred money? Was Mr. Kwong's 2020 Form 843 a timely request related to the April 15, 2017, payment?**

Section 6402(a) allows the IRS, within the applicable limitation period, to credit the amount of an overpayment against any liability in respect of an internal revenue tax owed by the person who made the payment. However, Treasury Regulation Section 301.6402-2(a)(1) states that payments may not be allowed or made after the expiration of the statutory period of limitations unless the payment is made before the expiration of the statute of limitations. In this case, on April 15, 2017, the IRS transferred $316,590 from the 2016 tax year to the 2007 tax year. According to the 2007 transcript provided by the IRS, a $50,565 assessment was made against the Plaintiff on May 25, 2009. *See* Exhibit A. Generally, under Section 6652, the IRS can collect a tax assessment for a period of 10 years from the date of an assessment. This means that the IRS meant that the statute of limitations on the May 25, 2009 assessment expired on or about May 25, 2019 and the IRS must have applied the 2016 payment to the 2007 tax year on or before May 25, 2019. Section 7422(a) may provide a different "date of payment" for an offset. Under Section 7422(a), a credit of an overpayment of any tax in satisfaction of any tax liability shall, for the purpose of any suit for refund of such tax liability, so satisfied, be deemed to be payment .. at the time such credit is allowed." In relation to this, Section 6407 provides that the date on which the IRS first authorizes the scheduling of an overassessment is considered the date on which the refund or credit is allowed, and pursuant to Treasury Regulation Section 301.6407-1, a credit or refund is considered to have

11

been allowed on the date an authorized IRS employee certifies the allowance of the overassessment.

In *General Instrument Corp v. United States*, 33 Fed. Cl. 4 (1995), this Court held an overassessment of income taxes was scheduled within the meaning of Section 6407 when the certifying official signed a Form 2188, Voucher and Schedule of Overpayments and Overassessments. Under this approach, the date the credit is posted to an IRS transcript or record of account is immaterial; instead, it is the authorized date of the credit from the overpayment account that establishes when the payment is deemed to have been made. In this case, the IRS never provided a Form 2188, Voucher and Schedule of Overpayments and Overassessments for either the 2007 or 2016 tax years. Since the Defendant never provided a Form 2188, Voucher and Schedule of Overpayments and Overassessments for either the 2007 or 2016 tax years, it may have transferred all or part of the 2016 overpayment to the 2007 tax year after the statute of limitations under Section 6652 has expired. Since the Defendant has failed to provide the Plaintiff and this Court with a Form 2188, Voucher and Schedule of Overpayments and Overassessments for either the 2007 or 2016 tax years, this Court should find that the Plaintiff timely filed its claim for refund for the 2016 tax year and that the Plaintiff may litigate the 2016 tax year.

**VI. CONCLUSION**

Plaintiff respectfully submits the above briefing in support of its Motion in Response for Summary Judgment and respectfully requests that the Defendant's motion be denied for the 2007, 2010, and 2011 tax years. The Plaintiff also respectfully asks this Court ***not*** to dismiss Plaintiff's refund claim as a matter of law for the 2016 tax year.

Respectfully Submitted,

Dated: October 6, 2025

*/s/ Anthony V. Diosdi*
Anthony V. Diosdi
Diosdi & Liu, LLP
505 Montgomery St. 11th Floor
San Francisco, CA 94111
Telephone: 415-318-3990
Fax: 415-335-7922
E-mail: adiosdi@sftaxcounsel.com

Attorney for Plaintiff